In re Application of M. B. Silberman et al. Transit,
Inc., et al., Appellants, v. M. B. Silberman et al.,
Appellees.
44 N. W. 2d 595
Filed November 10, 1950.   No. 32825.

*Swenson, Viren & Turner, R. E. Powell,* and *Rose-water, Mecham, Stoehr, Moore & Mecham,* for appellants.

*Jack W. Marer,* and *Bradshaw, Fowler, Proctor & Fairgrave,* for appellees.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Simmons, C. J.

This action is one on appeal from the Nebraska State Railway Commission. An interstate carrier contracted to purchase the stock of an intrastate carrier. The parties presented an application to the commission under section 75-240, R. R. S. 1943, for an order authorizing and directing the sale and transfer of the stock. Other carriers intervened and moved to dismiss or deny the application on the ground, among others, that the commission was without authority or jurisdiction to grant the order.

After hearing, the commission overruled the motion and granted the order. The interveners appeal. We reverse the order of the commission.

The fact situation so far as material to the issue here determined is not in serious dispute.

The M. & S. Transport Company is a Nebraska corporation. It will be referred to hereinafter as M. & S. All the outstanding common stock of M. & S. is owned and held by H. P. Milder and M. B. Silberman, who will hereafter be referred to as stockholders.

M. & S. holds a certificate of public convenience and necessity issued by the Nebraska State Railway Commission, hereinafter called the commission, authorizing it (M. & S.) to transport petroleum products in intrastate commerce.

Ruan Transport Corporation is a corporation created and existing under the laws of Iowa. It will be hereinafter referred to as Ruan. Ruan holds certificates of public convenience and necessity issued by the Interstate Commerce Commission authorizing it to engage as a common carrier in interstate transportation of petroleum products. It holds intrastate certificates in certain states other than Nebraska. At the time of the filing of the application herein, Ruan did not conduct intrastate operation in Nebraska and did not operate on any public highway in Nebraska in intrastate commerce. Ruan has no interstate operations on petroleum products to or from points in Nebraska. However, it has operations from Carter Lake, Iowa, to Iowa destinations. It traverses Nebraska territory in making these operations. It further appears that all the stock of Ruan is owned by John Ruan and that he, as an individual, does not own a controlling interest in any motor transportation company presently doing business in Nebraska.

On November 1, 1949, the stockholders and Ruan entered into a contract whereby Ruan agreed to purchase from the stockholders all the shares of stock of M. & S., subject to the approval of the commission. The con-

tract specifically recited that upon the closing date the purchaser would acquire all the outstanding stock of M. & S., and that as of that date M. & S. would own, free and clear of encumbrances, the intrastate operating authority of M. & S., and three trailer and tractor pieces of equipment. It further provided that as of the closing date there would be delivered to Ruan the resignations of the officers and directors of M. & S., effective as of that date. Other terms of the contract need not be recited.

It further appears that Ruan did not propose to change the corporate entity of M. & S.; that Ruan would be in a position to name its officers and directors; that Ruan would furnish whatever finances and equipment M. & S. required to operate; that Ruan would improve the M. & S. facilities; that the operations of M. & S. and Ruan would be coordinated under approximately the same management, direction, and control, and from the operations standpoint the operations of the two carriers would be approximately one and the same; and that Ruan did not consider any further proceedings necessary to enable M. & S. under the new ownership to operate under the existing certificate held by M. & S. It further appears that Ruan's purpose in acquiring the stock of M. & S. was "* * * to get an operation in the State of Nebraska to haul petroleum products in bulk," and to do that it had to have intrastate operating rights.

On November 4, 1949, the stockholders and Ruan jointly made application to the commission for authority to complete the transaction proposed in the contract, and for an order authorizing and directing the stockholders to sell, assign, and transfer the common stock of M. & S. to Ruan.

Notice was given and a hearing had. At the time of the hearing, Transit, Inc., a Nebraska corporation, and Mabel C. Herman, doing business as Herman Oil Company, common carriers of petroleum products under authority granted by the commission, appeared as intervener protestants and moved for denial or dismissal of

the application for the following reasons, among others: That the application is one purporting to come within the provisions of section 75-240, R. R. S. 1943; that the facts and circumstances surrounding the application do not meet the situations set forth in said section; and that as a result the commission does not have either jurisdiction or authority to grant the application..

The motion was renewed at the close of the applicants' case-in-chief and at the close of the hearing.

During the progress of the proceedings, other common carriers became intervener protestants.

The commission overruled the motion of intervener protestants, granted the application, and authorized the sale of the stock, subject to conditions not material here.

Motions for rehearing and reconsideration were made and overruled. The matter comes here with the intervener protestants as appellants and the stockholders and Ruan as appellees.

Sections 75-222 to 75-250, R. R. S. 1943, were originally enacted as chapter 142, Laws of 1937, page 526. Section 75-240, R. R. S. 1943, provides: "It shall be lawful, under conditions specified below, but under no other conditions, for two or more motor carriers to consolidate or merge their properties, or any part thereof, into one ownership, management or operation of the properties theretofore in separate ownership, or for any such motor carrier, or two or more such motor carriers jointly, to purchase, lease or contract to operate the properties, or any part thereof, of another such carrier; or for any such motor carrier, or two or more such carriers jointly, to acquire control of another such carrier through purchase of its stock; or for a person to acquire control of two or more motor carriers through ownership of their stock; or for any such person who has control of one or more motor carriers to acquire control of another such carrier through ownership of its stock. Whenever a consolidation, merger, purchase, lease, operating contract or acquisition of control is proposed, the carrier or

carriers or person seeking authority therefor shall present an application to the State Railway Commission, and thereupon the commission shall, if it deems a hearing necessary, notify such carriers and other parties known to have an interest, of the time and place for a public hearing in accordance with such rules and regulations as the commission may prescribe. If, after such hearing, the commission finds that the transaction proposed will be consistent with the public interest and does not unduly restrict competition, it may enter an order approving and authorizing such consolidation, merger, purchase, lease, operating contract or acquisition of control upon such terms and conditions as it shall find to be just and reasonable."

The parties here are in agreement that this application is brought under the provisions of the above section. The parties also agree that the authority to grant the application rests, if at all, on the clause "or for any such motor carrier, or two or more such carriers jointly, to acquire control of another such carrier through purchase of its stock."

Reduced down, the statutory provision which we are called upon to construe is this: "It shall be lawful, under conditions specified below, *but under no other conditions,* * * * for any *such* motor carrier, or two or more *such* carriers jointly, to acquire control of another *such* carrier through purchase of its stock * * *." (Emphasis supplied.)

We construed section 75-240, R. R. S. 1943, in the case of In re Application of Neylon, 151 Neb. 587, 38 N. W. 2d 552, and there held that the commission under the section has the authority to approve and authorize applications under the section only when the situations therein set forth are present and when the conditions therein specified are found to exist.

The question then is whether or not Ruan is "such motor carrier" under the act.

The term "motor carrier" is defined by section 75-223,

R. R. S. 1943, to mean "any person owning, controlling, managing, operating, or causing to be operated, any motor-propelled vehicle used in transporting passengers or property for hire over any public highway in this state"; the term "person" is defined to mean "any individual, firm, copartnership, corporation, company, association or joint stock association"; and the term "highway" means "the roads, highways, streets and ways in this state." If we are to stop there and follow the literal language of the definitions, then it must be held that Ruan is "such motor carrier" because of the operation in Nebraska on the Carter Lake, Iowa, haul from and to Iowa points. But it is obvious that we cannot stop there in construing this provision of the act.

The rules are:

"In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.

"Provided always that the interpretation of a statute is reasonable and not in conflict with legislative intent, it is a cardinal rule of construction of statutes that effect must be given, if possible, to the whole statute and every part thereof and it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. Just as an interpretation which gives effect to the statute will be chosen instead of one which defeats it, so an interpretation which gives effect to the entire language will be selected as against one which does not." In re Application of Rozgall, 147 Neb. 260, 23 N. W. 2d 85. See, also, State ex rel. City of Grand Island v. Union Pacific R. R. Co., 152 Neb. 772, 42 N. W. 2d 867.

If an interstate carrier operating over any public highway in this state is a motor carrier within the in-

tent of the provision being construed, and authorized by section 75-240, R. R. S. 1943, to purchase the stock, it could be argued forcibly that "such carrier" whose stock is to be purchased may likewise be an interstate carrier operating over the highways of this state, for the words "such carrier" are used to describe both the purchasing carrier and the carrier whose stock is being purchased. It might also follow that wherever the term "motor carrier" is used without more in sections 75-222 to 75-250, R. R. S. 1943, it would likewise apply to such an interstate carrier. Such a construction is not warranted.

Section 75-222, R. R. S. 1943, declares the policy of the Legislature to be to "regulate transportation by motor carriers in intrastate commerce upon the public highways of Nebraska" and in the same sentence uses the term "such carriers" when referring to motor carriers in intrastate commerce.

Section 75-224, R. R. S. 1943, provides that the act shall apply "to the transportation of passengers or property by motor carriers for hire engaged in intrastate commerce" with certain exceptions not material here.

By section 75-223, R. R. S. 1943, "intrastate commerce" means "commerce between any place in this state and any other place in this state and not in part through any other state."

In the same section the definition of common carrier has the limiting "in intrastate commerce" phrase, while the succeeding definition of contract carrier does not.

However, section 75-228, R. R. S. 1943, requires a certificate of public convenience and necessity issued by the commission for a common carrier by motor vehicle, subject to the act, to engage in "any intrastate operations on any public highway in Nebraska." Likewise, section 75-233, R. R. S. 1943, requires a permit issued by the commission for a "contract carrier by motor vehicle in intrastate commerce on any public highway of Ne-

braska." The act deals generally with intrastate carriers and intrastate commerce.

It seems clear that the term "such motor carrier," as used in section 75-240, R. R. S. 1943, here under construction, means a motor carrier in intrastate commerce.

Not only does section 75-224, R. R. S. 1943, provide that the act shall apply to transportation in intrastate commerce, but the title of the act in which sections 75-222 to 75-250, R. R. S. 1943, have their source provides that it is "An act to regulate transportation of passengers and property by motor carriers in intrastate commerce upon the public highways * * *." Laws 1937, c. 142, p. 526.

"We have said that, 'When the legislative intent is left in doubt by failure to clearly express it in the act, resort may be had to the title as an aid to the discovery of such intent.'" McConnell v. McCook Nat. Bank, 142 Neb. 451, 6 N. W. 2d 599. As we held there, so we hold here: "The construction which we have placed upon the act appears to be entirely consistent with the legislative intent as expressed in the title of the act and the act itself." McConnell v. McCook Nat. Bank, *supra*.

It necessarily follows that Ruan is not a motor carrier within the intent and meaning of section 75-240, R. R. S. 1943; that the act does not authorize the commission to approve the application; and by the provision "but under no other conditions" denies the commission the power that it undertook to exercise. The commission is without authority to approve the application and erred in doing so. Its order is accordingly reversed.

This decision makes it unnecessary to state or determine the other matters presented.

ORDER REVERSED.