CHARLES E. LEDWITH ET AL., APPELLANTS, V. BANKERS LIFE INSURANCE COMPANY OF NEBRASKA, A CORPORATION, ET AL., APPELLEES.

54 N. W. 2d 409

Filed July 18, 1952. No. 33133.

*Charles Ledwith* and *Max Kier,* for appellants.

*Woods, Aitken & Aitken, Robert W. Devoe,* and *James N. Ackerman, for appellees.*

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellants, policyholders of the Bankers Life Insurance

Company of Nebraska, brought this suit in equity against appellees to obtain an adjudication that the retirement plan adopted by the insurance company for the benefit of its salaried employees, including its officers, was illegal and invalid; that the amount set aside from the free surplus of the company on account of the retirement plan was illegally appropriated therefrom; that appellees be required to restore the amount thereof to the surplus of the company; and for relief incidental thereto.

When appellees are mentioned herein, otherwise than as a group, the Bankers Life Insurance Company of Nebraska will be identified as the company, and the individual appellees by those words.

The basis of the relief sought by appellants was in substance the following:

(1) That the retirement plan of salaried employees of the company violates the law of the state in the respects that (a) the statute (§ 44-213, R. S. Supp., 1951) does not permit the inclusion of officers under a retirement plan for employees; (b) the statute prohibits the payment of the whole cost of the plan by the company and requires cash contributions thereto by the beneficiaries of the plan; and (c) the formula of the plan for the measurement of retirement benefits includes consideration of past services and this violates the law of the state prohibiting pensions.

(2) That the individual appellees and the other officers and directors of the company engaged in a plan and conspiracy to defraud policyholders by establishing and financing the retirement plan for salaried employees of the company; that they were in control as stockholders, officers, and directors; that the individual appellees were trustees for the policyholders under the trust agreement controlling the mutualization of the company; that the stockholders, officers, and directors made themselves chief beneficiaries of the retirement plan, arranged to continue indefinitely in control of the company, and placed for their benefit a charge or lien on the policy-

holders; and that they have thus been guilty of fraud, breach of trust, and self-dealing with the surplus of the company for their personal advantage and to the prejudice of the policyholders.

The claims of appellants were each denied by appellees.

The district court found generally against appellants and rendered and entered a judgment of dismissal.

The company was organized in the year 1887 as a capital stock legal reserve life insurance company. Its status was unchanged until December 31, 1949. A provision of the insurance law of Nebraska since 1913 has been that: "No domestic company shall pay any salary, compensation or emolument to any officer, trustee or director thereof, in excess of a reasonable compensation for the services performed by such person, and in no case amounting in any one year to more than five thousand dollars to any person, firm, or corporation unless a greater sum shall be first authorized by a vote of two thirds of the board of directors of such company, if a stock company * * * and if a mutual assessment company * * * by a vote of two thirds of those present in person or by proxy, of the policyholders * * *. No such company shall make an agreement with any of its officers or employees, except soliciting agents, whereby it agrees that for any services rendered, or to be rendered, they shall receive any salary or compensation that will extend beyond a period of five years from the date of such agreement, nor shall it pay any pension whatsoever." § 44-213, R. S. 1943. The Legislature of 1945, by an amendment, inserted a comma after the word "whatsoever" and added this language, "but any such company may establish, participate in, and administer a retirement plan or plans for the benefit of its employees and agents, or any reasonable classification thereof, if such plan has been filed with and approved by the Department of Insurance." § 44-213, R. S. Supp., 1951. This act became effective on August 10, 1945. The company gave consideration to a retirement plan and made a re-

quest that its chief counsel and actuary prepare such a plan in the fall of that year. Investigation and study of the subject were made and continued until a plan was proposed and submitted to the Department of Insurance during January 1946. Additional consideration of the matter was given until September 5, 1946, when the company made formal application for approval of its final draft of a retirement plan for its salaried employees. The plan the company had proposed was approved by its board of directors on September 25, 1946, and by the Department of Insurance on November 7, 1946. It became effective on December 31, 1946. The provisions thereof are numerous. A summary of some of them will be sufficient for a consideration of the matters to be decided in this case. These are:

The word "employees" means all permanent active full-time salaried home office employees, including officers, building employees, employees in investment branch offices, and cashiers of agency branch offices who have been designated as such by the company, but does not include employees who are paid part salary and part commission.

The words "retirement date" mean the last day of the calendar month in which the sixty-fifth birthday falls, in case of a male employee, and in which the sixtieth birthday falls in case of a female employee.

The words "retirement annuity" mean a monthly income payable by the company upon the retirement of an employee or after the retirement date and continuously thereafter so long as the employee shall live, and shall be due on the last day of each calendar month. The first payment shall be due one month after the retirement date.

The general scope of the plan includes a retirement annuity based on the value of the employee's services to the company measured by the salary he has received from it. All employees with the company, as hereinbefore defined, are eligible for the plan and shall retain

membership therein only so long as they continue as employees of the company or thereafter so long as they are in receipt of retirement annuities or disability retirement allowances. For all employees reaching retirement age after December 31, 1950, the monthly annuity payments shall be equal to one-twelfth of two percent of each salary payment made by the company to the employee prior to the employee's sixty-fifth birthday in the case of male employees and prior to the sixtieth birthday in case of female employees, less the amount to which the employee is entitled for the same month under the primary insurance benefit of the Federal Social Security Act (as described in section 202(a) of the Federal Social Security Act, 1939 Amendment, Title 42, section 402(a), U. S. C. A.). For employees retiring on or before January 1, 1951, monthly annuity shall be the greater of the amount produced by the formula above or one-twelfth of two percent of the average annual salary paid by the company to the employee in the ten years immediately preceding December 31, 1945, or the employee's retirement date, whichever is the later date, multiplied by the number of years of service prior to such date up to but not exceeding 35 years, less the same deduction for social security benefits. (The last provision was only applicable to six of the senior officers of the company who had passed the maximum retirement age before the plan was made effective.) The plan contemplates that the cost of the provisions will be borne entirely by the company but it reserves the right to modify this provision in the future in its discretion. The company reserves the right to change or discontinue the plan at any time subject to the approval of the Director of Insurance, but no change or discontinuance shall adversely affect the benefits under the plan established prior to the date of change or discontinuance.

It is argued by appellants that the word "employees" as used in the statute (§ 44-213, R. S. Supp., 1951) may not be interpreted to include officers; that an employee

is one who is employed by another and who works for wages in the service of an employer; that he is distinguished from an official or an officer; that an officer is one who holds or is lawfully vested with an office as for instance an officer of an insurance company; and that the Legislature recognized this and distinguished an officer from others doing service for an insurance company in the first part of the statute by mentioning "officer, trustee or director" and clearly made a distinction between an employee and officer of such a company in a later provision by the language therein "No such company shall make an agreement with any of its officers or employees * * *." The 1945 amendment of the statute permits a retirement plan to be established and administered for the benefit of its "employees and agents * * *." It is concluded by appellants that if the Legislature had intended that officers might be included in any retirement plan authorized by the statute it would have used clear and appropriate language to express that intention and permission as it did in the provisions of the original statute, and that the amendment does not apply to or include officers of the company and its retirement plan is invalid at least as to all provisions thereof for the benefit of its officers.

The position of appellees in this respect is in substance that the word "employees" as used in the statute has no fixed meaning that controls in all situations; that the Legislature could not have selected a word of broader connotation and inclusion; that whether one who works or performs services for another is an employee is not determined by the rank or importance of the position he holds or the character of the service rendered; that the flexibility of the term "employees" is of special significance because of the rule that statutory provisions for pensions or retirement systems must be liberally construed so that their beneficial purposes may be broadened rather than narrowed; that the use of the word "employee" in legislation in this state has been

for many years construed to include officers by administrative departments charged with its enforcement or application within the knowledge of the Legislature and its acquiescence constitutes legislative approval; that the terms of the amendment evidence a purpose of the lawmakers to authorize a broad and liberal coverage of the retirement plans authorized; and that it was the intent of the amendment that officers were included in the term "employees." However appellees do not consider or discuss the character of the statute as to whether it is clear and unambiguous in meaning or ambiguous and of doubtful meaning.

If the statute (§ 44-213, R. S. Supp., 1951) is not ambiguous, construction of the provisions thereof applicable to and controlling the coverage of a retirement plan authorized thereby is not permissible or required and resort may not be had in this regard to any of the many aids available in the construction of a statute of doubtful meaning to ascertain the intention of the Legislature. In Armstrong v. Board of Supervisors, 153 Neb. 858, 46 N. W. 2d 602, it is said: "If the language of a statute is clear and unambiguous, courts will not by interpretation or construction usurp the function of the lawmaking body and give it a meaning not intended or expressed by the Legislature." See, also, Federal Farm Mortgage Corp. v. Adams, 142 Neb. 202, 5 N. W. 2d 384; 50 Am. Jur., Statutes, § 225, p. 204. A statute is not to be considered as appropriate for construction as a matter of course. It is only ambiguous statutes of uncertain meaning to which the rules of construction have application. In Cross v. Theobald, 135 Neb. 199, 280 N. W. 841, this court said: " 'Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself.' "

The obligation of the court in the consideration and application of a statute is to determine and give effect

to the purpose and intention of the Legislature as ascertained from the entire language thereof considered in its plain, ordinary, and popular sense. It is the duty of the court to give effect to the whole and each part of the statute if not in conflict with the legislative intent and to reconcile the different provisions of it, if possible, so as to make them logical, harmonious, and sensible. In Hansen v. Dakota County, 135 Neb. 582, 283 N. W. 217, it is said: "It is a fundamental rule of statutory construction that effect must be given, if possible, to all its several parts. No sentence, clause or word should be rejected as meaningless or superfluous, if it can be avoided; but the subject of the enactment and the language employed, in its plain, ordinary and popular sense, should be taken into account, in order to determine the legislative will. It is the duty of the court to discover, if possible, the legislative intent from the statute itself. It must be borne in mind that, in the legislative field, the legislature is supreme so long as it keeps within constitutional limits * * *." In In re Application of Rozgall, 147 Neb. 260, 23 N. W. 2d 85, the rule is stated: "Provided always that the interpretation of a statute is reasonable and not in conflict with legislative intent, it is a cardinal rule of construction of statutes that effect must be given, if possible, to the whole statute and every part thereof and it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. Just as an interpretation which gives effect to the statute will be chosen instead of one which defeats it, so an interpretation which gives effect to the entire language will be selected as against one which does not." See, also, In re Application of Silberman, 153 Neb. 338, 44 N. W. 2d 595; State ex rel. Hubbard v. Northwall, 150 Neb. 894, 36 N. W. 2d 282.

The statute from 1913 until the amendment of it in 1945 prohibited any agreement of more than five years duration between a domestic insurance company and any of

its officers and employees, except soliciting agents, for salary or compensation for services rendered or to be rendered. The amendment of 1945 was obviously intended to affect and remove to some extent this prohibition. It authorized any company of this character to establish and administer a retirement plan or plans for the benefit of its "employees and agents." The amendment significantly omitted the word "officers." The Legislature indicated no purpose or intention to alter or dispense with the bar of the statute as it existed before the amendment as to officers of any such company. The specific provisions decisive of this contention are: "No such company shall make an agreement with any of its officers or employees, except soliciting agents, whereby it agrees that, for any services rendered or to be rendered, they shall receive any salary or compensation that will extend beyond a period of five years from the date of such agreement * * * but any such company may establish, participate in, and administer a retirement plan or plans for the benefit of its employees and agents, or any reasonable classification thereof, if such plan has been filed with and approved by the Department of Insurance." § 44-213, R. S. Supp., 1951.

The retirement plan of the company and the benefits thereunder are a form of contingent deferred compensation for personal services of the employees and an integral part of the wage and salary structure of the company. The benefits provided by the plan constitute "salary, compensation or emolument" as these terms are used in the statute. This is conceded by appellees. These characteristics of a retirement plan have been recognized and established by judicial decisions. Inland Steel Co. v. National Labor Relations Board, 170 F. 2d 247, 12 A. L. R. 2d 240, adopted and approved the ruling of the defendant board that: " "* * * the term "wages" as used in Section 9 (a) must be construed to include emoluments of value, like pension and insurance benefits * * *. Realistically viewed, this type of wage en-

hancement or increase, no less than any other, becomes an integral part of the entire wage structure * * *.' " In Retirement Board v. McGovern, 316 Pa. 161, 174 A. 400, the court said: "This act provides for retirement pay. . Retirement pay is defined as 'adjusted compensation' presently earned, which * * * is payable in the future * * *. The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and complies with the terms, conditions, and regulations imposed on the receipt of retirement pay." In Opinion of the Justices, 88 N. H. 511, 192 A. 494, it is said: "Viewing the bill in this aspect, we see no attributes of a pension in the payments it proposes. They are to be for teaching to be furnished, and not for past teaching for which the agreed compensation has been fully paid. While past teaching may be a required qualification for one to benefit from the retirement payments proposed by the bill, its terms include no allowance of payment therefor." In McBride v. Allegheny County Retirement Board, 330 Pa. 402, 199 A. 130, the Pennsylvania court said: "Retirement pay is a part of the compensation for services rendered during active employment." In Kieran v. Hunter College Retirement Board, 255 App. Div. 378, 7 N. Y. S. 2d 612, the New York court said: "A retirement pension is in the nature of pay withheld to induce continued faithful service. It amounts to compensation for services previously rendered." In Bausewine v. Philadelphia Police Pension Fund Assn., 337 Pa. 267, 10 A. 2d 446, the court said: "* * * there can be no doubt that the fund is a retirement fund and the payments retirement pay; as such they represent in part adjusted compensation."

The company could not legally have contracted to pay retirement benefits to its employees before the statute was amended in 1945. A valid retirement plan of the company by virtue of the amendment of the statute must be within the authority granted by the terms

thereof. A particular intention expressed in an amendment of a statute in conflict to some extent with a general intention expressed in the statute will be given effect only to the extent of the conflict, leaving the statute as it was before its amendment to operate outside of the scope of the amendment. State ex rel. Missouri P. Ry. Co. v. Clarke, 98 Neb. 566, 153 N. W. 623; Lee v. Lincoln Cleaning & Dye Works, 144 Neb. 659, 14 N. W. 2d 227; Mancuso v. State, 123 Neb. 204, 242 N. W. 430; 50 Am. Jur., Statutes, § 367, p. 371. Stated differently the general provision of the statute under consideration, that all agreements by an insurance company with its officers or employees for a term of more than five years for salary or compensation for services are prohibited, is controlled and modified by the special provision of the amendment authorizing the company to have a retirement plan for its employees, but only to the extent of the authority granted by the amendment and the general provisions of the statute continue to operate outside of or beyond the scope of the amendment. In considering the amendment made to the statute it is important to bear in mind that the Legislature was not attempting to impose a prohibition upon insurance companies, but was engaged in modifying or removing a part of an existing one. If it intended what appellees contend, it would more appropriately have repealed the entire prohibition.

The statute provides in substance that no insurance company shall make an agreement, to extend beyond five years from its date, with any of its officers or employees for compensation or salary for services, except the company may have a retirement plan for the benefit of its employees. The fact that the lawmakers used the terms "officers or employees" in the first part of the sentence and omitted the word "officers" in the latter part of the sentence when it was considering and dealing with the general subject of compensation or salary points strongly and convincingly to the conclusion that it was

the intention of the Legislature to authorize retirement plans for employees and agents but not for officers; and that the prohibition in the first part of the sentence should continue as to officers but that it was removed as to benefits of retirement plans for employees. The intent of the Legislature is expressed by omission as well as by inclusion. In re Estate of McKee, 71 N. D. 545, 3 N. W. 2d 797. This doctrine has been recognized and applied by this court. In School District of Omaha v. Adams, 151 Neb. 741, 39 N. W. 2d 550, it is stated: "The maxim, expressio unius est exclusio alterius, which is operative in the law as an aid in the determination of legislative intent with reference to statutory grants of power, means that where a statute enumerates the things upon which it is to operate, or forbids certain things, it is to be construed as excluding from its effect all those not expressly mentioned, unless the Legislature has plainly indicated a contrary purpose or intention." The court may not read into a statute something omitted from it by the Legislature. Neither is it the duty nor within the province of the court to discover a meaning not warranted by the legislative language. Wessel v. City of Lincoln, 145 Neb. 357, 16 N. W. 2d 476; Hansen v. Dakota County, *supra;* Luther v. State, 83 Neb. 455, 120 N. W. 125, 20 L. R. A. N. S. 1146; State ex rel. Thayer v. School District, 99 Neb. 338, 156 N. W. 641.

The effect of the language used prohibiting an insurance company from assuming by contract an obligation for salary or compensation to officers or employees thereof for services for a period longer than five years was to classify persons performing services regularly for it (1) as officers, (2) as employees, and (3) as soliciting agents. The company was barred from contracting with any of the first two classes, officers or employees, for pay for their services for a longer period than five years. A contract for compensation of the third class for an indefinite period was permitted. The prohibition as to

employees was abrogated to the extent of retirement benefits for them but the prohibition was continued without change as to officers. The change in the phraseology of an amendatory statute raises a presumption that a departure from the old law was intended. The Legislature is presumed to know language used in a statute and if a subsequent act on the same or similar subject uses different terms in the same connection the court must presume that a change in the law was intended. Likewise the omission of a word in an amendment of a statute will be assumed to be intentional and for a purpose. Where it is apparent that a substantive portion of a statute has been omitted from an amendment thereof courts have no authority to supply the omission. That would be judicial legislation. A statute should be effectuated as its language warrants. Ex Parte Hoese, 48 S. D. 337, 204 N. W. 174; Voorhies v. Faust, 220 Mich. 155, 189 N. W. 1006, 27 A. L. R. 706; Plummer v. Davis, 169 Okl. 374, 36 P. 2d 938; Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 45 L. Ed. 1171, 21 S. Ct. 906; Wyman, Partridge & Co. v. Tierney, 42 Wyo. 321, 294 P. 781, 75 A. L. R. 667; Hall v. Baylous, 109 W. Va. 1, 153 S. E. 293, 69 A. L. R. 527; Wine v. Commonwealth, 301 Mass. 451, 17 N. E. 2d 545, 120 A. L. R. 889; 50 Am. Jur., Statutes, §§ 275, 276, pp. 261, 263.

Section 44-213, R. S. Supp., 1951, is in this regard clear and free from doubt. Officers of a domestic insurance company are not employees within the meaning of the statute authorizing the company to establish and administer a retirement plan for the benefit of its employees. The retirement plan of the company, to the extent it attempts to include officers in its coverage, is unauthorized and invalid.

Appellants contend that a retirement plan authorized by the legislation of 1945 for an insurance company requires participation of the employees by contribution to the cost of it; and that the Legislature intended to differentiate between a pension and a retirement system

and the distinction it made is in the requirement of a contribution by the employees to the fund from which costs of operation and benefits are satisfied. This, they say, the plan of the company fails to do. They insist the words "participate in" as used in the act mean to have or enjoy a part or share in common with others, and that the company and its employees may "participate in" a retirement plan but the company may not assume and satisfy the total cost of the plan and its operation.

In construing a statute of doubtful meaning courts may consider all statutes on the same subject. Placek v. Edstrom, 148 Neb. 79, 26 N. W. 2d 489, 174 A. L. R. 856. Prior to 1945 Nebraska had adopted legislation in reference to retirement systems in the field of public service as follows: (1) Firemen in metropolitan cities, primary cities, and cities of the first class, except those with home rule charters, as early as 1895 (Laws 1895, c. 39, p. 168); (2) teachers' retirement systems in metropolitan cities in 1909 (Laws 1909, c. 132, p. 477); (3) public library employees in metropolitan cities in 1913 (Laws 1913, c. 152, p. 389); (4) policemen in metropolitan cities in 1921 (Laws 1921, c. 116, art. V, § 10, p. 499); (5) municipal university employees in cities of the metropolitan class in 1943 (Laws 1943, c. 24, p. 116); and (6) firemen in cities of the primary or first class which had adopted home rule charters in 1943 (Laws 1943, c. 92, p. 313). In 1945 there was agitation for legislation on the subject in the general municipal field, in the entire field of teachers, and for grant of authority to insurance companies to permit them to have retirement plans. The existing statutory systems, referred to as "retirement funds," "relief and pension funds," "pensions," and "retirement plans," had varying characteristics but they also had important common features. One of the statutory plans mentioned above was noncontributory, four of them were contributory, and one was optional as to whether contribution should

or should not be required to be made by the beneficiaries of the plan.

These systems are of two distinct types: (1) A statutory plan complete within itself without discretion granted any administering agent or authority—the plans for firemen in 1895, teachers in 1909, and policemen in 1921, fall within this first class of legislation; and (2) a statutory grant of authority to a governmental agency to adopt a retirement plan within the framework of the grant—the plan for employees of municipal universities is of the second class of legislation. The Legislature of 1945 enacted the first class of legislation for a Nebraska municipal retirement system of employees of cities (except Omaha), villages, and rural electric power districts in L. B. 217 (Laws 1945, c. 37, p. 173), and for a retirement system for school employees in L. B. 120 (Laws 1945, c. 219, p. 637), and the second class of legislation for domestic insurance companies in L. B. 86 (Laws 1945, c. 106, p. 340). L. B. 217 and L. B. 120 provide absolute and fixed requirements for the employee and employer in the municipal employees and school employees systems as to benefits, retirements, contributions, and other conditions. The city, village, power districts, and the schools which chose to enter the system found a plan which was final and complete without discretion in any respect in any authority administering it.

L. B. 86, the product of the same Legislature, constituted what may properly be called an enabling statute authorizing domestic insurance companies to formulate retirement plans for their employees and agents. It is proper and helpful to consider the two types of legislation for retirement plans enacted by the 1945 session of the Legislature in deciding the legislative purpose and intent, and the proper meaning of a part of the act involved in this contention. The title of L. B. 86 contains the language: "* * * to provide that a domestic insurance company may establish and admini-

ster a retirement plan for the benefit of its employees and agents * * *." The grant of authority in the act itself contains the words: "* * * but any such company may establish, participate in, and administer a retirement plan or plans for the benefit of its employees and agents * * *." Laws 1945, c. 106, p. 340. The words "participate in" could not have been considered important because they are entirely omitted from the title to the act. There is no requirement in the title or the body of the act requiring employees to contribute anything on account of any retirement plan authorized. It contains no standard by which any amount of contribution from the employees could be measured. There are no boundaries, neither minimum nor maximum, for this purpose. It cannot be assumed that this was an oversight. The members of the Legislature were then well aware of the essentials of retirement plans, the matter of contributory or noncontributory plans, the mechanics and formulas for measuring such matters, as well as provisions for benefits, and other related conditions. They informed themselves and developed legislation in L. B. 217 consisting of many printed pages of the Session Laws in which they set forth and adopted a detailed, carefully worked out, and comprehensive retirement plan for Nebraska municipalities. Laws 1945, c. 37, p. 173. They expressly provided therein an exact basis and formula for contribution by the employees. But the same Legislature did not choose to include a similar provision or any requirement for contribution by employees with regard to retirement plans for the insurance industry, nor did they bar a contributory plan. They recognized the need for flexibility in this field. They elected to and did place the responsibility for the legislative approval of a particular plan on the Department of Insurance.

If a statute is susceptible of more than one interpretation, the language used must be construed in its plain, ordinary, and popular sense. If there is one con-

struction which results in an absurdity and another avoids such a result, the latter may be accepted. In re Guardianship of Kraft, 150 Neb. 171, 33 N. W. 2d 534; State ex rel. Hubbard v. Northwall, *supra*. The position of appellants, that the company may not pay the cost of the plan but that the employees must satisfy some portion thereof or the enabling statute is violated and the plan is invalidated, is based upon the argument that the definition of "participate in" is limited to the meaning of "sharing." This is obviously only one of several meanings of "participate." A commonly accepted usage and meaning is "to take part in" in the sense of entering into. 31 Words and Phrases, p. 132. It may mean affirmative action as distinguished from silence or inaction. Head v. New York Life Ins. Co., 43 F. 2d 517. This is a more natural, plain, and ordinary meaning of the word as it is used in the applicable statute than the one selected and advanced by appellants.

The argument is also made that because of the presence of the conjunction "and" the three verbs "establish, participate in, and administer" impose three separate and mandatory prerequisites to a valid retirement plan. This assumption is over optimistic. The laxity in the use of the conjunctive "and" and the disjunctive "or" is so frequent that the doctrine has been accepted that they are interchangeable and that one may be substituted for the other if to do so is necessary to give effect to any part of a statute or to effectuate the intention of the Legislature. State ex rel. City of Grand Island v. Union P. R. R. Co., 152 Neb. 772, 42 N. W. 2d 867; Carlsen v. State, 127 Neb. 11, 254 N. W. 744. The presence of the words "participate in" does not authorize the many and elaborate implications imperative to sustain this contention of appellants. The alternative sense of the verb phrase is evident without regard to the presence of the conjunction. The statute does not require contribution by employees to the cost of retirement plans authorized by it.

Appellants assert that the benefits of the retirement plan of the company are pensions prohibited by statute and that through the formula for the measurement of the benefits retroactive effect is given to the amendment of 1945. § 44-213, R. S. Supp., 1951. A pension is a gratuity where it is granted for services previously rendered and which, at the time they were rendered, were fully paid for and gave rise to no legal obligation for further compensation. City of Lincoln v. Steffensmeyer, 134 Neb. 613, 279 N. W. 272, 119 A. L. R. 914; State ex rel. Haberlan v. Love, 89 Neb. 149, 131 N. W. 196, 34 L. R. A. N. S. 607, Ann. Cas. 1912C 542; Kern v. City of Long Beach, 29 Cal. 2d 848, 179 P. 2d 799; Manning v. Spry, 121 Iowa 191, 96 N. W. 873; People v. Westchester County Nat. Bank, 231 N. Y. 465, 132 N. E. 241, 15 A. L. R. 1344; 40 Am. Jur., Pensions, § 1, p. 960. The retirement plan involved herein does not provide for a gratuity. The benefits thereof are not a pension, the plan in this respect is not prohibited by the statute, and does not give a retroactive effect to the statute which permits the company to have the plan. It does not provide for benefit payments to any persons other than those employed by the company at the time or subsequent to the time it became effective. There is no management discretion in the allotment or measurement of benefits. The plan is a part of the basic salary structure of the company. The benefits are a form of contingent deferred compensation and the plan is uniform in its application to all covered employees. It did not become operative for more than a year after the effective date of the legislation authorizing it. Inland Steel Co. v. National Labor Relations Board, *supra;* Opinion of the Justices, *supra;* Retirement Board v. McGovern, *supra;* Bausewine v. Philadelphia Police Pension Fund Assn., *supra;* Kern v. City of Long Beach, *supra;* Mattson v. Flynn, 216 Minn. 354, 13 N. W. 2d 11; State ex rel. Sena v. Trujillo, 46 N. M. 361, 129 P. 2d 329, 142 A. L. R. 932.

Retirement plans for employees for various reasons have become and are accepted as part of the national economic and wage structure. The 1945 Legislature recognized this, was well aware of the statutory prohibition against pensions in the form of gratuities or gifts, provided for retirement plans for the insurance industry as it had previously, and during that session provided retirement plans of various kinds for employees in different departments of the government of the state. The retirement plan of the company does not differ in principle from these statutory plans in its application to employees on its payroll on the date it was effective nor in the objective in measuring benefits. The benefits of the plan of the company may not be characterized or condemned as pensions within the prohibition of the statute.

In any retirement plan a formula for computation of benefits to those who are ultimately to retire is obviously an essential element. The grant of power to insurance companies to have retirement systems contains no formula for this purpose. The plan involved might have used a percentage of the final salary of the employee. No one would contend that such a basis would produce retroactive operation of the amendment of 1945. The date of the retirement would be after the date of the law, after the effective date of the retirement plan, and after the final salary constituting the measuring basis. There is no different principle or result when the benefits are measured by some other method of computation. The right to retirement benefits, which is the gist of the matter, is determined in either case at a date after the passage of the law. To calculate the benefits by using a formula with arithmetical computations, including salary earned in past years, or including past years of service, is no more giving the act retroactive effect than to predicate the benefit on final salary. Appellants confuse the yardstick with the substantive right of the employee. The right arises by

virtue of employment on the date of the plan plus continued employment for some period of time thereafter. It is permissible for the formula to include consideration of final rate of pay, average rate of pay of past months, past years, total pay, or years of prior service, or any one of many methods of computation. There is no benefit paid for past service, as such, in the plan involved in this case. The basic factor is that the employee must be employed by the company and must have reached the required age at the date he qualifies for retirement benefits. The amount of the benefits is computed on a formula selected to produce the ultimate objective of the plan. "Credit for past services" and like expressions in the field of retirement systems mean no more than a standard by which to measure the amount of benefits that meet the desired objective.

The various statutory plans in this state allow full credit for past service antedating the plan. More than one-half of them provide that the benefits shall be equal to one-half or 50 percent of salary at time of retirement. The allowance of full credit for past service, when the benefits are measured by a percentage of final salary, is implicit in the computation or formula. In State ex rel. Haberlan v. Love, *supra,* this court said: "* * * the relator continued in the service nine years after the law was enacted, and thereby earned a right to his pension under that act * * *. The fact that some firemen earned their pensions by serving a comparatively short time subsequent to 1895, whereas others were compelled to continue in the service for a greater length of time, does not make the legislation void." Likewise in Retirement Board v. McGovern, *supra,* a retirement act was challenged as not being based on adequate present service after the effective date of the act. The court of that state said: "* * * there is no legislative prohibition against the amount of the salary that shall be paid to such employee, or when it shall be paid, or the amount of adjusted compensation then to be provided for and

paid in the future. This compensation may depend on a long or short service after the effective date of the Retirement Act * * *. * * * as it was viewed by other courts in determining the constitutionality of like systems * * * such delayed compensation may be considered as an inducement for the experienced employee and others to remain in the employ of the government." It is also said in Haldeman v. Hillegass, 335 Pa. 375, 6 A. 2d 801: "His right to recovery is unaffected by the non-existence of a retirement system for the many years of his service prior to 1938 * * *." See, also, Matter of Wright v. Craig, 202 App. Div. 684, 195 N. Y. S. 391; State ex rel. Dudgeon v. Levitan, 181 Wis. 326, 193 N. W. 499. The retirement plan of the company is not a prohibited pension, and the formula adopted for determining benefits under it does not result in payments for past services nor does it give retroactive effect to the amendment of 1945.

The basic authority for fixing salaries of employees of stock insurance companies was at the time important to this case granted to, and vested in, the board of directors of the company. § 44-212, R. S. 1943. The articles of incorporation of the company empowered and directed the board to fix salaries and wages in harmony with the statutory provisions. The company was a stock insurance company when the retirement plan was adopted by its board of directors on September 25, 1946.

The retirement plan is a part of the wage and salary structure of the company, and the expenditure it requires is a part of the cost of doing business in the form of contingent deferred compensation for personal services of the employees. The contingent benefits clearly constitute "salary, compensation or emolument" within the statute. § 44-213, R. S. Supp., 1951. The members of the board of directors, three of whom are the individual appellees, were required by the statute, the charter, and the bylaws of the company to formulate and vote for a retirement plan, if it was in the judgment

of the board advisable and in the best interests of the company. The evidence without dispute establishes that the company required a retirement system to meet competition, and to build up and maintain a desirable group of employees for the promotion, conservation, and growth of the business. The record contains ample evidence that the managers of the business were qualified, responsive to the obligations of their trust, and were conducting the company and its business in the best interests of the policyholders. In Royal Highlanders v. Wiseman, 140 Neb. 28, 299 N. W. 459, this court said: "Within the limits of their authority directors possess full discretionary powers, and in the honest and reasonable exercise of such powers are not subject to control by stockholders or by courts at the instance of stockholders. The accepted principle is that the wisdom and expediency of business policies and the methods of executing them are left to the discretion and decision of the board of directors. The established rule is that, in the absence of usurpation, or fraud, or of gross negligence, or transgression of statutory limitations, courts of equity will not interfere at the suit of dissatisfied stockholders merely to overrule and control the discretion of directors on questions of corporate management, policy or business." The reason of this doctrine makes it applicable to and controlling of the challenge made by policyholders of an insurance company instead of stockholders of a corporation. The adoption of the retirement plan by the board of directors of the company and the ratification of it by the policyholders at the annual meeting were compliance with the most exacting requirements of valid and effective corporate action.

The rights of the stockholders of the company in reference to each other and the stock of the company were fixed from the time of the adoption of the plan in January 1941 to transform the company to a mutual insurance company. The validity of the plan and all documents incident thereto was finally adjudged on

July 19, 1941, about five years before there was any thought of a retirement plan for the employees of the company. The duty of the trustees to the stockholders was to observe the precise terms of the trust agreement for handling and paying the purchase price of the stock. The right of the company concerning the stockholders and the stock was plainly and completely fixed. There was no permission for discretion of the trustees in this regard. The company by the terms of the plan and judgment of the court was to and did continue in all respects a stock company until the mutualization was completed on December 31, 1949. The power, function, and responsibility of the board of directors existed until that date. The adoption of a retirement plan before that date for the company, subject to approval of the Department of Insurance, was a matter for determination by and within the discretionary power of the individual appellees and the other directors. If they acted in good faith and for the best interests of the company and policyholders, the duties and responsibilities of the individual appellees as trustees under the mutualization plan for the stockholders did not add to or change their duties or responsibilities to the policyholders with respect to this matter of management decision. In the absence of fraud, unfairness, or transgression of statutory limitations courts of equity will not interfere with, overrule, or control the directors on questions of corporate management, policy, or business upon complaint of stockholders or policyholders. The retirement plan is advantageous to the employees who qualify for its benefits, and experience shows it was not detrimental to the company or the policyholders. Since the year in which it was adopted the increase in the insurance business written by the company has been $60,000,000, the increase in the annual income $1,100,000, and the increase in the assets $9,200,000. It is not unreasonable to believe that the existence of the retirement plan contributed to this very desirable and profitable apprecia-

tion in the business assets and income of the company.

The judgment should be and is reversed with directions to the district court of Lancaster County to render a judgment in this case as follows: That the retirement plan of the Bankers Life Insurance Company of Nebraska involved herein is, and has been at all times, unauthorized and invalid in the respect and to the extent that it provides that the officers of the company are included in the plan and its benefits; that any provision thereof intended to bring any officer of the company within the coverage or benefits of the plan is, and has been since the adoption of it, invalid and such provision is vacated and annulled; that the retirement plan for the benefit of the employees of the company is legal and effective; and that appellees be directed and required to return, restore, and pay to the company and to the proper fund or funds thereof all assets and money set aside, appropriated, or expended for, or on account of, the retirement plan including cost and expense because of the inclusion of the officers of the company in the coverage of the plan.

REVERSED AND REMANDED WITH DIRECTIONS.