STATE OF NEBRASKA, APPELLEE, v. DOUGLAS L. MANN, APPELLANT.

246 N. W. 2d 604

Filed November 3, 1976. No. 40717.

Paul E. Watts, J. Joseph McQuillan, Gerald E. Moran, and Robert C. Sigler, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

The defendant entered a plea of guilty to a charge of "speeding 100 M.P.H. in a 55 zone" on December 28, 1975, at a point 2 miles east of Springfield, in Sarpy County, Nebraska. The Sarpy County court imposed a fine of $100 and costs and suspended the defendant's motor vehicle operator's license for a period of 60 days. The county court denied defendant's motion to modify sentence by eliminating that portion of the sentence suspending the operator's license of defendant. On appeal to the District Court the judgment of the county court was affirmed and this appeal followed.

This case turns on an interpretation of a portion of section 60-427, R. R. S. 1943. The statute generally authorizes a judge, in his discretion, to suspend a motor vehicle operator's license for not less than 10 days nor more than a year upon conviction for a traffic violation under the conditions set forth in the statute. The critical first portion of that statute reads: "Upon conviction of any person in any court within this state of any violation of (1) any law of this state pertaining to the operation of motor vehicles or (2) any city or village ordinance pertaining to the operation of a motor vehicle in such a manner as to endanger life, limb, or property, * * *." The only change in this portion of the statute since 1947 occurred in 1957, when the numbers (1) and (2) were inserted at the positions shown above. No subsequent changes of this portion of the statute have been made since. The 1957 amendment made substantial changes and additions in the latter portions

of section 60-427, R. R. S. 1943, with respect to drunken driving offenses. These changes will be discussed later.

The critical issue on this appeal is whether or not the 1957 amendment of section 60-427, R. R. S. 1943, was intended to, or did, overrule a 1955 opinion of this court, Olson v. State, 160 Neb. 604, 71 N. W. 2d 124. The holding in Olson was based upon the language quoted above but without the addition of the "(1)" and "(2)." Olson held that the discretionary power to suspend an operator's license under section 60-427, R. R. S. 1943, was limited to charges of operating a motor vehicle in such a manner as to endanger life, limb, or property, or while under the influence of alcoholic liquor or any drug, brought under appropriate statutes or ordinances and did not apply to a simple charge of speeding. Olson specifically held that where there was no allegation in a speeding charge that a defendant operated a motor vehicle in such a manner as to endanger life, limb, or property, the statute, being criminal in nature, must be strictly construed and may not be extended by implication.

Olson also reaffirmed this court's previous holding that where a person is charged and convicted under an applicable statute for operating a motor vehicle "in such a manner as to endanger life, limb, or property," his license may be suspended pursuant to the provisions of section 60-427, R. R. S. 1943, unless a greater period of suspension is mandatory under the charging statute. The Olson court specifically rejected the contention by the State that the words "in such a manner as to endanger life, limb, or property" should be applied only to violations of city or village ordinances and not to violations of "any law of this state." The State now makes the same identical arguments here. The State contends that a conviction under any state statute pertaining to the operation of motor vehicles is sufficient to justify the suspension of an operator's license under section 60-427, R. R. S. 1943. The State concedes that

allegations and proof that a violation was "in such a manner as to endanger life, limb, or property" are required before a license may be suspended for a violation of city or village ordinances pertaining to the operation of motor vehicles. Nevertheless, the State contends that the 1957 amendment of section 60-427 evidenced the Legislature's intent to overrule Olson and to authorize license suspensions for state law violations upon conviction alone, and upon a wholly different basis than similar violations of city or village·ordinances. We cannot agree.

Until 1957, section 60-427, R. R. S. 1943, had not been changed since 1947, and during that time, by its specific terms, it applied not only to operation of vehicles in such a manner as to endanger life, limb, or property in violation of either state law or local ordinances, but also specifically applied to operating a vehicle while under the influence of alcoholic liquor, both under the state statutes and under any city or village ordinances. Until 1953, there were no statutes authorizing suspension or revocation of an operator's license for drunken driving except section 60-427, R. R. S. 1943. Until 1953, the penalty section for a drunken driving conviction under state law had no provision authorizing the suspension or revocation of an operator's license. The section simply directed the court to order a convicted defendant not to drive for periods of time varying from 30 days to 2 years, with the exact time generally left to the discretion of the court. In 1953, for the first time, section 39-727, R. R. S. 1943, authorized the court to revoke or suspend an operator's license upon conviction for violation of the state drunken driving law. In 1953, for the first time, section 39-727, R. R. S. 1943, required a mandatory revocation of a driver's license for specified periods of time for first, second, or third offenses of drunken driving. From 1953 until 1957, both section 60-427 and 39-727, R. R. S. 1943, authorized suspension or revocation of an operator's license for violation of state drunken

driving law. At the same time section 60-427, R. R. S. 1943, remained the only section authorizing suspension of an operator's license for a drunken driving conviction under city or village ordinances. License suspensions under section 60-427, R. R. S. 1943, were discretionary while suspensions under section 39-727, R. R. S. 1943, were mandatory, and the time periods specified were also different.

This extensive history is pertinent in view of the statement of purpose by the judiciary committee on L.B. 388 to amend section 60-427, R. R. S. 1943, in the 1957 session of the Legislature. That statement of purpose read: "This bill clarifies the question of when an operator's license may be suspended for a conviction of drunken driving. Presently the penalty for such conviction for violation of a state law is different than for violation of a city ordinance. The bill makes the revocation of a license period for drunken driving the same, whether the charge be brought under a city ordinance or a state law."

L.B. 388 completely changed the application of section 60-427, R. R. S. 1943, to drunken driving violations by excepting operation of a motor vehicle while under the influence of alcoholic liquor or any drug from the discretionary suspension of license provisions entirely. It also specifically provided that upon conviction in any court in the state for violation of any city or village ordinance pertaining to the operation of a motor vehicle while under the influence of alcoholic liquor or any drug the judge shall suspend the motor vehicle operator's license for a period of 6 months. That provision then coincided with the penalty for a first offense drunken driving conviction for violation of a state statute under section 39-669.07, R. R. S. 1943, formerly section 39-727. Those changes in section 60-427, R. R. S. 1943, where the only material or substantial changes that were made unless it can be said that the housekeeping addition of (1) and (2) was a substantial change.

It is quite clear that the Legislature had no intention to change any material portions of section 60-427 except those dealing with the drunken driving provisions. It is undisputed that the Legislature made extensive language changes in the law for the stated purpose of making license suspension penalties for drunken driving identical, whether the violation charged was under state law or under city or village ordinances. It is unrealistic to assume that by the mere insertion of (1) and (2) the Legislature intended to change authorized license suspension penalties for all other offenses to make them different, depending on whether the prosecutions were brought under state or under city or village ordinances. Any such assumption is not only unsupported by the record but is wholly unreasonable.

In the case at bar the charge was speeding. There was no allegation that the violation was in such a manner as to endanger life, limb, or property, and under a plea of guilty there was no evidence. Olson v. State, 160 Neb. 604, 71 N. W. 2d 124, has not been overruled, either by this court or by the Legislature, and its reasoning is still valid.

The discretionary power given to the court in section 60-427, R. R. S. 1943, to suspend a license to operate a motor vehicle is limited to a charge of operating a motor vehicle in such a manner as to endanger life, limb, or property, brought under appropriate statutes or ordinances, and does not apply to a charge of speeding standing alone.

The rule is that when part of a sentence is illegal, an appellate court may, if the sentence is divisible, modify it by striking out the illegal part. Olson v. State, *supra*.

The order of the District Court is modified and that part of the sentence suspending the defendant's license to operate a motor vehicle is stricken.

AFFIRMED AS MODIFIED.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion herein because I do not believe that Olson v. State (1955), 160 Neb. 604, 71 N. W. 2d 124, even if correctly decided, is controlling herein. The Olson decision was filed by this court on June 17, 1955, the same day the Sixty-seventh Legislature adjourned sine die. The amendments to section 60-427, R. R. S. 1943, here in question were made by the Sixty-eighth Legislature, which convened January 1, 1957, the earliest possible opportunity to alter section 60-427 following the ruling in Olson.

As we stated in Ledwith v. Bankers Life Ins. Co. (1952), 156 Neb. 107, 54 N. W. 2d 409: "The change in the phraseology of an amendatory statute raises a presumption that a departure from the old law was intended."

The statute before amendment read, so far as material herein: "Upon conviction in any court within this state of any violation of any law of this state pertaining to the operation of motor vehicles or of any city or village ordinance pertaining to the operation of a motor vehicle in such a manner as to endanger life, limb or property, or while under the influence of alcoholic liquor or any drug * * * the magistrate or judge of such court may, in his discretion, suspend the license of such convicted person to operate a motor vehicle."

Section 60-427, R. R. S. 1943, now reads: "Upon conviction of any person in any court within this state of any violation of (1) any law of this state pertaining to the operation of motor vehicles or (2) any city or village ordinance pertaining to the operation of a motor vehicle in such a manner as to endanger life, limb, or property, except for operating a motor vehicle while under the influence of alcoholic liquor or any drug, the judge of such court may, in his discretion, suspend the license of such convicted person to operate a motor vehicle * * *."

The general rule with regard to the interpretation

of an amended statute is that the amended act is ordinarily to be construed as if the original statute had been repealed and a new and independent act in the amended form had been adopted in its stead.  In the Olson case the State contended that the phrase "in such a manner as to endanger life, limb, or property," as then written, applied only to violations of city or village ordinances contained in such provisions and not to violations of any law of this state.  In that case, this court rejected that interpretation, stating:  "There is nothing in the grammatical construction of the sentence nor its punctuation to suggest such a meaning."  The Legislature then amended the statute to specifically separate the two provisions so that now it should be apparent that the phrase "in such a manner as to endanger life, limb, or property" applies only to violations of city or village ordinances and *not* to any law of this state pertaining to the operation of motor vehicles.

It seems to me the majority opinion ignores the obvious when it holds the Olson case controlling herein.  The statutory alteration in this case was by direct and specific act of the Legislature, at the earliest time it was possible to do so after the filing of the Olson opinion.  To hold as the court now does, in my judgment, specifically ignores the action of the Legislature and the grammatical construction of the sentence and its punctuation.

The defendant was charged with driving 100 miles per hour in a 55 mile per hour speed zone at night for a distance of at least 2 miles.  This offense in my judgment merited the penalty imposed, and I would affirm the judgment of the trial court.

WHITE, C. J., and BOSLAUGH, J., join in this dissent.