REQUESTED BY: Dear Senator George:
In your letter of February 21, 1980, you asked a number of questions relating to certain proposed legislation, LB 756, which appears to allow various commodity boards the option of utilizing check-off funds for membership dues in an association of grain boards. You have noted that this association of grain boards may use such funds for the promotion and development of the grain industry through seminars and conferences, and may also use such resources in the preparation and support of or opposition to proposed legislation.
You have called our attention to certain existing provisions of Nebraska law, such as Neb.Rev.Stat. § 2-3311 (Reissue 1977) and Neb.Rev.Stat. § 2-3622(10) (Cum.Supp. 1978), which generally prohibit the use of any soybean or corn check-off funds for the promotion or opposition of any candidate for public office or for the purpose of influencing legislation.
In regard to this observation, you have asked whether the passage of LB 756 would, in effect, `. . . void the above two sections as they pertain to the enactment of legislation, thus allowing the use of these [check-off] funds for the influence of legislation.'
You have also asked us to consider whether such commodity boards are allowed to sponsor seminars where legislators or governmental employees are invited to participate. You have asked us to address this question `. . . under the premises that, (a) LB 756 does not pass, and (b) LB 756 is enacted.'
Finally, you have inquired as to whether the wheat board, which we assume to be the same as authorized under Neb.Rev.Stat. §§ 2-2301, et seq. (Reissue 1977), is currently allowed to use any check-off funds to influence legislation. We will consider these questions in the order you have presented them.
 I.
The primary question raised in your letter is whether passage of LB 756 would void the current prohibitions which bar the Soybean and Corn Boards from spending check-off funds to influence legislation or election for public office. Neb.Rev.Stat. § 2-3311(10) (Reissue 1977), prohibits the Soybean Development, Utilization, and Marketing Board from spending any funds `. . . directly or indirectly to promote or oppose any candidate for public office or to influence legislation.' Neb.Rev.Stat. § 2-3622(10), (Cum.Supp. 1978), imposes an identical restriction on the Corn Development, Utilization, and Marketing Board.
Under the terms of LB 756, the Soybean and Corn Boards, along with the Wheat Board, would be authorized to expend check-off funds for membership dues in an association of grain boards. See, section 1(1), LB 756. Such an association would then be allowed to use the funds collected as dues to further the mutual goals of all the member boards, `. . . including the preparation and support of or opposition to legislation.' See, section 1(2), LB 756.
The remainder of the bill is devoted to amending the statutory authorizations for the Wheat, Soybean, and Corn Boards, respectively, to allow the State Treasurer to disburse check-off funds for association dues.
On its face, the LB 756 amendment to the respective boards' enumerated duties, responsibilities, and powers would seem to be in clear conflict with the existing prohibitions, as noted above, against expenditures to influence elections or legislation. Since LB 756 does not directly repeal those existing prohibitions, the changes accomplished by the bill, if passed, would have to be read and construed in conjunction with and in the context of current law.
By the language used, it may be assumed the LB 756 is intended by its proponents to effect some change in existing statutory authorizations and prohibitions relative to the boards' expenditure of check-off funds. Our concern is the extent of the change which would be accomplished by the proposed amendment. Since the bill does not explicitly repeal the existing prohibitions of Neb.Rev.Stat. § 2-3311(10) (Reissue 1977), and Neb.Rev.Stat. § 2-3622(10) (Cum.Supp. 1978), we begin with the assumption that the legislative intent is to read LB 756 in the context of those restrictions.
As the Nebraska Supreme Court has said in considering a question similar to the one presented here:
 ". . . A particular intention expressed in an amendment of a statute in conflict to some extent with a general intention expressed in the statute will be given effect only to the extent of the conflict, leaving the statute as it was before its amendment to operate outside the scope of the amendment. . . ." Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 119, 54 N.W.2d 409, 418
(1952).
Under this rule of statutory construction, the general prohibitions on political or legislative spending by the Soybean and Corn Boards would be altered and controlled by the special amendment contained in LB 756 only to the extent of authority specifically granted by the amendment. In this instance, that leads us to the conclusion that passage of LB 756 would abrogate existing spending restrictions only to the extent of creating one specific exception to the prohibitions on indirectly influencing legislation.
Passage of LB 756 would mean that the grain boards could pay dues to an association which is authorized to be active in the legislative arena. Thus, the Soybean and Wheat Boards would be able, in effect, to indirectly influence legislation. However, this is the extent of the amendment. As one authority on the subject has stated: `The unchanged sections and the amendments are to be interpreted so that they do not conflict. All the provisions of both are to be given effect and reconciled if possible.'Sutherland on Statutory Construction, § 22.35, p. 196.See also, State ex rel. Crook v. Coupe, 91 Neb. 463,136 N.W. 41 (1912). Applying this rule to LB 756 results in the conclusion that the Soybean and Corn Boards would still be prohibited from directly influencing legislation and from indirectly influencing legislation in any manner other than through the specifically excepted association of grain boards. And, of course, since LB 756 does not purport to change this restriction, the Soybean and Corn Boards would continue to be prohibited from spending funds to promote or oppose any candidate for public office.
 II.
Your second question concerns whether the Wheat, Corn, and Soybean Boards are currently permitted to sponsor seminars at which legislators, and state or federal employees are invited to participate. The answer to this question would appear to be yes with or without the passage of LB 756. Under Neb.Rev.Stat. § 2-2309(2) and (5) (Reissue 1977), the Wheat Board is authorized to adopt a program of education, and to conduct any other program of education, and to conduct any other program for the promotion of Nebraska-grown wheat.
Seminars such as those you referenced would seem to fall within these broad educational and programatic powers. In addition, section 2-2309(3) authorizes the Wheat Board to cooperate with other entities in both the private and public sectors. This provision would seem to clearly allow participation by legislators, or state and federal employees in any such seminars.
The statutory authorizations of the Soybean and Corn Boards are not so broad as those of the Wheat Board. However, the identical provisions of both seem to already encompass the seminars you envision. Section 2-3311(4) allows the Soybean Board to gather and evaluate the information necessary to operate its commodity program. Section2-3622(4) (Cum.Supp. 1978), grants the same authority to the Corn Board. Both boards also are authorized to establish a mechanism for input from growers on at least an annual basis. Since it is possible that the seminars you suggest could accomplish either or both of the boards' enumerated responsibilities referred to above, current law would appear to permit them.
We would offer one caveat, however. The seminars you propose would not be allowed if their sole or primary purpose would be to promote, directly or indirectly, activities or objectives prohibited by each boards' respective statutory authorization.
 III.
Your final question is whether the Wheat Board currently is allowed to expend check-off funds to influence legislation. For purposes of this opinion, we will assume this question also relates to the proposed legislation, LB 756, or other new legislation you may be contemplating.
The answer to your question appears to be yes. Unlike the Soybean and Corn Board, the Wheat Board is not specifically prohibited from such activities. As was noted by the Nebraska Supreme Court in Ledwith, supra, `The intent of the Legislature is expressed by omission as well as by inclusion.' Id. at 120, 54 N.W.2d at 418. The omission of any restriction on Wheat Board expenditures to influence legislation is an indication that the Legislature intended to allow such expenditures, or at least did not specifically exclude the possibility of such expenditures. Consequently, we cannot say that the Wheat Board is precluded by statute from expending monies to influence legislation.